MATOS, AS PRESIDENT OF THE "UNIONISTAS DE PONCE" PARTY,
PETITIONER AND APPELLEE, v. SIACA, ACTING SECRETARY
OF PORTO RICO, RESPONDENT AND APPELLANT.

APPEAL from the District Court of San Juan, Section 1,
in a *Mandamus* Proceeding.

No. 1197.—Decided at a Special Term on October 9, 1914.

ELECTIONS—ELECTORAL BALLOTS—DEVICE.—The law requires that political parties
organized or to be organized in Porto Rico shall use a device on the electoral
ballot to identify and distinguish their respective tickets.

ID.—ELECTORAL BALLOTS—DEVICE.—The selection of a device is the exclusive
privilege of each party, and the law prohibits expressly only that they adopt
as such the national flag, the coat of arms of Porto Rico, or of the United
States, or any device which, in the opinion of the Secretary of Porto Rico,
resembles too closely a device already selected by some other party.

ID.—DEVICE.—The device submitted by the "Unionistas de Ponce" party to the
Secretary of Porto Rico and which is the object of this proceeding, does not
come within the express prohibition of the Election Law.

ID.—CONSTRUCTION OF ELECTION LAWS—INTENTION OF LEGISLATORS.—In constru-
ing statutes governing elections, the intention of the legislators, which is the
supreme law under the Constitution, should be borne in mind and effect should
be given to the express will of the majority by allowing each elector to cast
his vote according to the dictates of his own conscience.

ID.—PUBLIC POLICY—HOW DETERMINED.—The public policy of a state or nation
should be determined by its constitution, its statutes and its jurisprudence
and not by the different opinions of laymen, attorneys, or judges in regard
to the requirements and interests of the public.

ID.—PUBLIC POLICY OF PORTO RICO AS TO NUMBER OF EMBLEMS COMMON TO THE
PEOPLE AT LARGE AND THEIR USE AS ELECTORAL DEVICES—"FLAG OF PORTO
RICO."—The line of conduct sketched by the Legislature being discerned
plainly from an examination of the history of the law in force regulating
the matter, and the so-called "Flag of Porto Rico" not being included among
the emblems specified therein as common to all the people, it was held, with-
out considering whether the said flag could really be so classified, that the
Secretary of Porto Rico was not authorized by law to refuse to register the
same on the electoral ballots as a part of the device selected by the "Unionis-
tas de Ponce" party.

The facts are stated in the opinion.

*Mr. Cayetano Coll y Cuchí* for the appellee.

*Mr. Howard L. Kern,* Acting Attorney General, for the
appellant.

MR. JUSTICE DEL TORO delivered the opinion of the court.

This is an appeal from a judgment of the District Court of San Juan, Section 1, in *mandamus* proceedings.

The following were the allegations of the petition:

"1. That the *Unionistas de Ponce* party is a political organization duly registered in the office of the Secretary of Porto Rico according to the Election Law, and has filed in the said office a list of municipal candidates who have been nominated for the offices of mayor, councilmen and members of the school board to be voted for in the election to be held in the month of November next.

"2. That in compliance with the provisions of the Election Law, the *Unionistas de Ponce* party, at the time of filing its petition in the office of the Secretary of Porto Rico for the purpose of being constituted a political party with a lawful status before the Insular Government, presented, together with its list of candidates, the corresponding device to be used at the head of its ticket on the official ballot carrying all the tickets to be voted for at the next election.

"3. That the said device consists of a figure showing two hands grasping and supporting a staff bearing a flag of five bars and a triangle with one star, there being a cross on the truck of the staff; all of which is more graphically shown by the accompanying drawing which is made a part of this petition.

"4. That both the party and its ticket have been registered by the Secretary of Porto Rico, but the device described above has been rejected, without any cause or reason, because the secretary says that 'it contains the flag which is called the flag of Porto Rico, the purpose of which is to represent the whole and not a part of the people.'

"5. That, according to the Election Law, no political party shall employ as a device the national flag or the coat of arms of Porto Rico, and the Secretary of Porto Rico may reject any device which, in his opinion, too closely resembles a device already selected by some other political party.

"6. That neither the spirit nor the letter of section 35 of the Election Law justifies the rejection of the said device on account of the said flag, for it is not the national flag nor does it represent the coat of arms of the United States or of Porto Rico, nor is it the flag of a part of the people or the flag of all the people, but simply an emblem without political signification of any kind other than that which its adoption as the device of the *Unionistas de Ponce* party may give it temporarily.

"7. That, according to the Election Law, the Secretary of Porto Rico may only reject a device when it resembles too closely a device

already selected by some other political party, or when it contains the national flag or the coat of arms of Porto Rico, and his refusal to register the said device is unlawful and unjustified, he being required by the peremptory terms of the statute to admit the same."

The petition having been filed, the district court set a day for the respondent to appear and show cause why the writ of *mandamus* should not issue. The respondent duly appeared and answered as follows:

"1. As to the allegation contained in the first paragraph of the petition, this respondent says: That on one of the days of the month of August of the present year the petitioner presented in the office of the Secretary of Porto Rico a petition stating that a political party had been organized in the city of Ponce under the name of '*Unionistas de Ponce*' and giving a list of the names of the candidates of the said party to be voted for at the coming election for the offices of mayor, councilmen and members of the school board of Ponce. That the petitioner also submitted the device to be employed by the said party, which device is a figure showing two hands grasping and supporting a staff with a flag and a cross.

"2. This respondent admits the facts alleged in the second paragraph of the petition for a writ of *mandamus*.

"3. As to the third allegation of the petition, this respondent alleges that the device submitted by the *Unionistas de Ponce* party is described in the petition as follows: 'Be it known that the name of the political organization or party which we represent is *Unionistas de Ponce,* and its electoral device is two hands supporting the flag which we call the flag of Porto Rico, and on the truck of the staff appears a cross, as is shown by the sketch on the margin.'

"Certified copies of the said petition and device are attached hereto and made a part of this answer.

"4. In answer to the fourth allegation of the petition, the respondent alleges that he filed in the office of the secretary the list of candidates submitted by the *Unionistas de Ponce* party, but not the device, for the reason that the same is composed of a flag which the said party alleges in its petition to the Secretary of Porto Rico is 'that which we call the flag of Porto Rico.'

"This respondent maintains that the said device is contrary to public morals and incompatible with the interests and welfare of the citizens of Porto Rico, inasmuch as the object thereof is to represent

the whole and not a part of the electorate and the whole and not a part of the people.

"Wherefore, the respondent, having discretional power so to do, refused to register the said emblem, as may be seen from the letter which he sent to the petitioner and which is made a part of this answer.

"5. The fifth allegation of the petition is admitted.

"6. In answer to the sixth allegation of the petition, the respondent alleges: That he admits that the said flag is not the national flag and does not represent the coat of arms of the United States or of Porto Rico, but he denies that the same is free of all signification.

"The respondent alleges that, according to the spirit of the Election Law, the Secretary of Porto Rico has discretional power to reject any party device which may be against the public interest and welfare, and maintains that the device submitted by the *Unionistas de Ponce* party is against the public interest for the reason that the said device contains the flag which the petitioners themselves call the flag 'of Porto Rico,' undoubtedly because they know that a large part of the people so call it although it has not been adopted by any legislative act and is not the official flag of Porto Rico.

"This respondent alleges that from the wording of the petition presented by the *Unionistas de Ponce* party to the Secretary of Porto Rico for the purpose of securing the filing of the petition and the acceptance of the device mentioned in the first paragraph of this answer, it is deduced that the object of the said party in selecting such device was that it should represent the whole and not a part of the people.

"The respondent maintains that the device submitted by the *Unionistas de Ponce* party may be regarded as a common emblem and its use in voting would result in defrauding or deceiving the illiterate voter for whose guidance devices are placed on the ballot.

"7. As to the allegation of the seventh paragraph of the petition for a writ of *mandamus,* the respondent alleges and says: That the grounds on which the Secretary of Porto Rico may base his rejection of any device submitted by a political organization or party, are not alone those mentioned specifically in section 35 of the Election Law. The Secretary of Porto Rico has discretional power to reject any emblem or device submitted by a political party which may be contrary to the spirit of the Election Law and inconsistent with the public interest and welfare.

"The respondent alleges that, according to the spirit of the Election Law, he neither is nor was bound to accept the device mentioned

in the first paragraph of this answer, therefore he denies that in re-jecting the said device he committed an unlawful or unjustified act.''

The hearing having been had, the district court considered the case and, on the grounds set forth in its written opinion, rendered judgment ordering that a peremptory writ of *mandamus* issue against the Secretary of Porto Rico directing him to register the device adopted by the *Unionistas de Ponce* party on the electoral ballots. The said judgment was amended later in order to conform to the journal of the court so that its dispositive part should read that the writ should be directed to the secretary ''commanding him to admit and register in the records of his office the device presented by the *Unionistas de Ponce* party for the purposes of the Election Law.''

Therefore, the question to be decided on the appeal taken by the respondent is whether the judgment appealed from holding that the Secretary of Porto Rico was bound to admit and register the device selected and presented to him by the said political party, *Unionistas de Ponce,* should be reversed or affirmed. After thoroughly considering the matter, we are of the opinion that the judgment should be affirmed.

The ballot in elections, says Cyclopedia of American Government, volume 1, page 652, is printed by public authority at public expense, and the principle of the Australian or secret ballot is now in force in every state except Georgia and South Carolina. There are, however, several varieties of the Australian ballot. First, there is a Massachusetts ballot in which the names of all candidates are grouped in alphabetical order under the title of the several offices, so that the voter must indicate each candidate for whom he votes; secondly, there is the party column ballot, which permits the voter to vote a separate ticket by making a single cross in a circle. The other forms of ballots used in the United States are merely modifications of one or both of these schemes.

On page 622 of volume 2 of the same work, in treating of the "Party Circle," it is said:

"The most popular form of the Australian ballot, is the party column type. On this ballot the names of all the candidates of each party are grouped, candidates for the same office being on the same horizontal line in each column. At the head of the column stands the party circle, which may be identified by some party emblem as well as by the name printed above it. The Republican party usually displays an eagle; the Democratic party, a game-cock; and the National Progressive party, a moose's head; but the emblem varies in different states. Among minor parties a greater variety usually appears. The printing of the party circle furnishes a direct inducement toward voting a 'straight ticket' (*see*) since one mark in this space votes the entire column. Though the amount of effort required for 'scratching' varies greatly it is always more than is needed for 'voting straight.' Mr. Allen has demonstrated in his article on 'Ballot Laws' that more than twice, sometimes ten times, as much discrimination in voting is shown where 'scratching' is easy as where it is more complicated and difficult than 'voting straight.' To the illiterate voter the party circle is indispensable. In Denver a burly Irishwoman once touched the woman in the next booth and whispered, 'Oi am a Democrat. Do Oi put me mark roight on the rooster?' "

In Porto Rico the Australian ballot system is also in force and elections are governed by an act approved in 1906, to which various amendments have since been made. The part of said act pertinent to this case is section 35 which, as amended in 1908, reads as follows:

"No party shall employ, as a device upon the ballots, the national flag, or the coat of arms of Porto Rico or of the United States. No device shall be selected which, in the opinion of the Secretary, resembles too closely a device already selected by some other party.

"Should any party fail to select a device before the date on which candidates are certified to the Executive Council by the Secretary of Porto Rico, then the Secretary shall assign some device to said party to designate it upon the official ballots."

In accordance with the law, a political party organized and which may be organized in this Island must employ a device on the election ballot to identify and distinguish its

ticket from that of other political parties. The selection of
the device is the province of each party for itself and the
statute only expressly forbids the use as such device of the
national flag or the coat of arms of Porto Rico or of the
United States or of any device which, in the opinion of the
secretary, resembles too closely a device already selected by
some other party.

Therefore, the device presented by the *Unionistas de Ponce*
party to the Secretary of Porto Rico does not fall within
the express prohibitions of the statute. This conclusion is so
clear that the respondent himself admits it. Nevertheless, as
we have seen, the respondent in his answer "maintains that
the said device is contrary to public morals and incompatible
with the interests and welfare of the citizens of Porto Rico,
inasmuch as the object thereof is to represent the whole and
not a part of the electorate and the whole and not a part of
the people." And he further maintains that, having exer-
cised the discretional power which he claims to have to con-
sider and decide whether the device presented is contrary to
public interest and welfare, his ruling cannot be disturbed by
a court in a *mandamus* proceeding.

In the case of *Sola* v. *Carrel et al.,* 16 P. R. R., 671, this
court made the following citation from 15 Cyc., 317:

"In the construction of statutes regulating elections it is import-
ant to keep in mind two recognized principles: (1) The legislative
will is the supreme law under the constitution, and the legislature
may prescribe the forms to be observed in the conduct of elections,
and provide that such method shall be exclusive of all others; (2)
since the first consideration of the state is to give effect to the ex-
pressed will of the majority, it is directly interested in having each
voter cast a ballot in accordance with the dictates of his individual
judgment."

Let us see what the intention of the Legislature was in
this case. In section 251 of the Revised Statutes of Porto
Rico of 1902 (section 22 of the Election Act) appears, among
other provisions, the following:

"Said devices may be the figure of a star, an eagle, or some appropriate symbol, but the coat of arms or seal of Porto Rico, or of the United States, the national flag, or any other emblem common to the people at large shall not be used as such device."

Subsequently, in 1906, the Legislature enacted a new election law, section 35 of which provides only as follows:

"No party shall employ, as a device upon the ballots, the national flag, or the coat of arms of Porto Rico or of the United States."

The prohibition of the use of "any other emblem common to the people at large" was omitted. Finally, in 1908, the said Legislature again took notice of the matter of devices and amended section 35 by adding a prohibitory clause against the use of devices which, in the opinion of the Secretary of Porto Rico, resemble too closely a device already selected by some other party, but said nothing expressly with regard to the use of emblems common to the people at large.

In the case of *Enders* v. *Enders,* 164 Pennsylvania State, 266, reported in 44 A. S. R., 598, the court said:

"Public policy, in the administration of the law by the courts is essentially different from what may be public policy in the view of the legislature. With the legislature it may be, and often is, nothing more than expediency. The public policy which dictates the enactment of a law is determined by the wisdom of the legislature."

And in the cases of *Hartford Fire Insurance Co.* v. *Chicago M. & St. P. Ry. Co.,* 70 Fed., 201, 202; 30 L. R. A., 193; and *United States* v. *Trans-Missouri Freight Ass'n.,* 58 Fed., 58, 59; 24 L. R. A., 73, cited in 6 Words and Phrases Judicially Defined, 5814, the doctrine is laid down that "The public policy of a state or nation must be determined by its constitution, laws, and judicial decisions; not by the varying opinion of laymen, lawyers, or judges as to the demands of the interests of the public."

The public policy in Porto Rico as to the use as electoral devices of emblems common to the people at large, is, in our opinion and taking into consideration the foregoing doctrine

and the history of the law, definitely fixed by the authority empowered to do so — the Legislature. The Legislature of Porto Rico began by specifying certain emblems common to all the people, but, thinking that there might be others of the same kind which it had not foreseen, prohibited generally the use of emblems common to all the people. Later, the general clause was suppressed and the prohibition limited to the use of the emblems expressly enumerated. In doing this it acted within its plain authority; therefore, the line of conduct followed by it should prevail. To accept the theory of the respondent would be to sanction the revival of the Act of 1902 — that is, to recognize in an executive officer the power which is vested only in the Legislature under our system of government, and to substitute our judgment for that of the Legislature.

The question at issue in this case is limited to the objection made by the Secretary of Porto Rico to the use of the flag which appears in the device presented by the *Unionistas de Ponce* party on the ground that said flag was intended to be used, not as the emblem of a part of the people, but of all the people. This being so, and having arrived at the conclusion that the use of the said flag is not expressly prohibited by the statute and is not contrary to the public policy in Porto Rico, it is not necessary to consider and decide whether the Secretary of Porto Rico has discretional power, according to law, to refuse to register devices which are notoriously immoral or openly inconsistent with the public welfare. We will say only that if such devices should be presented to the secretary and he should refuse to register them and the parties presenting the same should appeal to the courts for aid by means of a writ of *mandamus,* the courts, in the exercise of their discretional power, would certainly refuse to grant the same. 26 Cyc., 146, and cases cited.

The judgment appealed from should be affirmed.

*Affirmed.*

Justices Aldrey and Hutchison concurred.

Chief Justice Hernández and Justice Wolf did not sit at the hearing on this case.